IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-CR-459 CMS |
| | ) | |
| JUSTIN E. FALDON, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**
**REQUESTING DOWNWARD VARIANCE**

Defendant Justin Faldon, through Assistant Federal Defender Kevin Gau, hereby gives notice he will be praying for a **sentence of 180 months (15 years) followed by a ten-year term of supervised release**. Mr. Faldon's request represents the statutory-minimum 15-year sentence required for Count 2, 18 U.S.C. § 2251(a) & (e), and also a downward variance from the Sentencing Commission's guidelines imprisonment range. (Doc. 44, Presentence Investigation Report [disclosure copy] ("PSR") ¶ 91).[1] Mr. Faldon respectfully asks the Court to consider several factors under 18 U.S.C. § 3553(a) which support his sentencing prayer:

## I. A 15-Year Sentence is Sufficient, but not Greater than Necessary

Born in Fort Smith, Arkansas, Justin Faldon is the youngest of three children born to his mother, Linda Faldon.[2] His sister, Trisha Gurling, is two years older than him, and his brother,

[1] Mr. Faldon's prayer also differs from the plea agreement's joint recommendation of 240 months (20 years). Undersigned counsel engaged in further sentencing discussions with the Government following the plea, and opposing counsel graciously permitted Mr. Faldon, through counsel, to argue for 15-year sentence, instead of the 20years contemplated in the plea agreement; counsel understands the Government still maintains 20 years is appropriate.

[2] Justin's social history is informed in part by undersigned counsel's office interviews with Justin Faldon, his mother, Linda Faldon, his siblings Roy Dunga and Trisha Gurling, and Steve Pope, Linda's former boyfriend.

Roy Dunga, is roughly eight years older. Justin's early life was shaped by parental separation, chronic parental substance use, and his older brother Roy's debilitating accident which required the family to reconfigure their roles in order to care for Roy, as well as sexual abuse in Justin's childhood and adolescence, minimally treated mental illness, and his own escalating substance use and self-harm beginning in adolescence that escalated after he met his wife, Heather Curtman, who also has had self-harming behaviors. These factors provide some insight into the mental degradation that led to Mr. Faldon's conduct here, and together they support finding that a 15-year sentence is sufficient but not greater than necessary.

**A. Separation from an important father figure**

Justin was six months old when his parents separated. Justin's father re-entered their lives briefly when Justin was around 11 or 12. Justin's father was an alcoholic and an addict and was later incarcerated. When Justin was about a year old, his mother Linda began a relationship with Steve Pope, who remained in the children's lives for eight to ten years and is still regarded by all the siblings as a father figure. He was in their lives even after he and Linda separated. Mr. Pope has since stated that he helped raise Justin, who recently reached out to him from jail after a rift between them. Mr. Pope has acknowledged he and Linda were heavy drinkers, which caused stress in the home. But Mr. Pope made sure the children had clothes and food. The children would visit him on weekends even after he and Linda separated, and he had a new girlfriend. Mr. Pope was later convicted of drug charges, and his incarceration was traumatic for the children. They felt like they lost the one person they trusted. Mr. Pope could not see Justin for ten to 15 years, but he has since gotten his life together and runs a successful chicken farm in Arkansas.

**B. Learning difficulties**

Justin received special education services both in Missouri and in Arkansas. He discontinued in the eighth grade because he found it hard to study. He also wanted to stay close to

Roy, because their mother was away a lot.[3] Justin has difficulty reading and has relied on counsel's oral recitation of the various pleadings and agreement in order to completely understand the subject matter.

**C. Alcohol and substance abuse among adults in the home**

Linda Faldon has admitted she "played around' with drugs before Roy's accident. Both her side and Justin's father's side were heavy drinkers and drug users. Linda began using drugs after her relationship with Mr. Pope fell apart, and thereafter was frequently absent from home. Her children learned to care for each other.

**D. Shouldering adult responsibilities for Roy but not directed back to school**

Roy's accident was pivotal in many ways and forced changes in the family dynamic. Justin was eight or nine at the time. His older brother, whom Justin idolized, broke his neck at the age of 19 in an accident, and was left quadriplegic. This event reshaped the family's future plans. Linda moved with the children to St. Louis so that Roy could receive specialized care at St. Louis University Hospital. The family's memories of this period center around nursing homes and hospitals. Justin and Trisha stayed close to Roy for long stretches, and they worried about leaving if something happened to Roy. Linda has admitted she had a hard time convincing Justin and Trisha to go to school, and both had dropped out. Justin often stayed overnight and slept in a chair near Roy. Justin was very worried that something could happen to Roy during treatment.

**E. A series of traumatic accidents in rural Missouri**

Eventually Roy moved out of the skilled nursing setting. Justin recalls that once, when he was about ten and the family (including Roy) was living in Union, Missouri, he was frying something on the stove and left it unattended to check on a deer trap. A grease fire ensued, which set the house on fire. Roy had to be lifted out of the house. Justin felt very guilty and responsible

---

[3] Family members could not recall the names of the various schools Justin attended.

for this accident. They were able to salvage the house but had to move to Gerald, Missouri for a while as the house was rebuilt.

One of the neighbors who helped rebuild the home in Union was Junior Gruby, who was probably in his 60s at that time. Unfortunately, while Mr. Gruby was cleaning his own fireplace, there was a terrible accident and he caught fire. He ran out to look for his wife while he was on fire. Justin was by his side when the ambulance got there, but Mr. Gruby died from the burns. Soon thereafter, two of Mr. Gruby's bothers—who had been friends with Justin's family—got into a fight which resulted in a traffic accident that killed one of them. This sequence of tragic events in Union and Gerald, Missouri were gut punches to Justin's boyhood psyche.

**F. Caring for Roy**

Over time, Justin grew into a caretaker for Roy, which continued into his adulthood. He helped cook and feed Roy, administered medication, managed his colostomy bag, drove him to appointments and used to help lift him into a shower. Roy now has a Hoyer lift and has a ramp at home.

**G. A victim of sexual abuse**

At age seven or eight, Justin was molested by two cousins who were around 14 years old. He disclosed this to Trisha after it happened. She herself had been abused by their maternal grandfather. Both kept their abuse a secret. In addition, a family friend named Harvey (last name unknown), in his 40s, lived with the family for a short period. Harvey sexually abused Justin on at least two occasions, when Justin was in his early teens. Justin told his sister about it. Once their mother found out, she asked Harvey to leave. No police report was made.

**H. A hard worker**

Until his arrest, Justin worked hard to provide for his family. Justin met Heather Curtman in early 2017, and they were married by October 2018. Ex. A, 2 (excerpt from Judgment of Dissolution, 25AB-DR00331). They have been divorced since 2025. Heather brought three

children to the marriage and together they had three more. During their marriage, Justin always maintained employment, made good money and provided for his family. PSR ¶¶ 82 – 86. He worked long hours as a machinist – sometimes over 12 hours a day. He let his wife control the finances, and the family got into some debt as the pair tried to make ends meet. The financial troubles added strain to the marriage and Justin's mental health.

I. **History of depression, anxiety, and self-harm**

Justin was diagnosed with depression even as a teenager, but it got worse as he got older. When he was 15, Trisha knocked an AR-15 out of his mouth. He once shot himself in the knee just to see what that would feel like. By 18, Justin was an alcoholic. In his early twenties, Justin's urges to self-harm diminished but problems appeared again in his relationship with Heather. She would engage in self-harm by cutting and Justin would try to stop her, but he soon started cutting himself to find relief from the financial and relationship stresses he was experiencing. Justin's upper arms and forearms are evidence of numerous healed linear scars. Ex. B, 3 – 5 (Phelps Health Medical Center record excerpts). Justin has been taking medicine for anxiety disorders since December 2019. Ex. C, (Missouri Baptist Sullivan Hospital record excerpts). Justin was treated for self-inflicted lacerations after fights with Heather. Ex. B., 4. He once punched himself in the head and tried to jump out of a moving vehicle because he felt depressed when there was talk of Heather breaking up with him. Ex. B, 6. Most recently, he attempted to shoot himself in the head in 2024, resulting in hair loss and hearing loss to his left ear. PSR ¶ 70.

**J. Future plans as a productive worker in a supportive environment**

Justin hopes to move back to Arkansas to work on the chicken farms owned by Mr. Pope following his release from prison. Mr. Pope has indicated he is interested in hiring Justin as well, as he recognized Justin's work ethic. In addition, Justin looks forward to returning to a strong and supportive family unit consisting of his brother Roy, his mother Linda, his sister Trisha; each is aware of his crime but looks forward to renewing a life with him when he is released from custody.

K. **Seventeen uncredited months in primary state custody**

An 180-month sentence also considers the 17 months, approximately, Mr. Faldon will have served in primary state custody before his federal sentencing, time served which the Bureau of Prisons ("the Bureau") will not credit as it stands now. The state custody time relates to pretrial detention on pending state charges alleging conduct relevant to the present federal case. Specifically, on May 18, 2025, the Franklin County Sherriff's Office arrested Mr. Faldon for this offense, and the Franklin County prosecutor eventually charged him with two counts of sexual exploitation of a minor, possession of child pornography, and sexual misconduct involving a child under 15 in State of Missouri case no. 25AB-CR01052-01. (PSR ¶ 65 (noting the "circumstances for this case are summarized in the Offense Conduct Section" of the PSR)).

Mr. Faldon was held in the Franklin County jail until his writ into federal custody on October 17, 2025. (PSR p. 1). While he moved from the Franklin County Jail to a jail contracted with the U.S. Marshals, he was nevertheless still in primary state custody at that time because he appeared here by the writ. As a result, Mr. Faldon has been in primary state custody for over 17 months (from May 18, 2025 until October 22, 2026).

Due to the writ and Mr. Faldon's primary state custody status, the Bureau will not grant him credit for this 17-month pre-trial custody period due to the state case. 18 U.S.C. § 3585(b) (providing defendants do not receive credit for prior custodial time if that time is "credited against another sentence."); Exhibit D, p. 2 (Henry Sadowski, BOP Regional Counsel Northeast Region, *Interaction of Federal and State Sentences When the Federal Defendant is under State Primary Jurisdiction*) ("A federal sentence does not begin to run when a federal defendant is produced for prosecution by a federal writ of habeas corpus ad prosequendum from state custody. . . The sovereign which first arrested the offender [i.e., the state] has primary jurisdiction over the offender, unless that sovereign relinquishes it to another sovereign [i.e., the federal government] by, for example, bail release.").

Thus, as the Bureau will not credit Mr. Faldon for the time he has been sitting until now in state primary custody for conduct relevant to this present federal case, a 180-month federal sentence is a severe sentence representing 15 years yet to be served, and forms a sufficient, but not greater than necessary sentence. 18 U.S.C. § 3553(a)(1).

## II. This Court Should Waive the Special Assessment Under 18 U.S.C. § 3014 and Either Waive or Order a Nominal Assessment Under 18 U.S.C. 2259A Because Mr. Faldon is Indigent

This Court is required to impose a $5,000 special assessment, but only for "non-indigent" defendants. 18 U.S.C. § 3014. To determine whether a defendant is indigent, this Court must analyze "both a defendant's current financial situation and his ability to pay in the future." *United States v. Barthman*, 983 F.3d 318, 322 (8th Cir. 2020) (internal quotations and citation omitted) (finding defendant was indigent and not subject to the special assessment). Mr. Faldon has very few assets and negative net worth. PSR ¶¶ 87 – 88. Given his lack of resources and his debt, this Court should find Mr. Faldon is indigent. Further, Mr. Faldon's future job prospects will be limited. Once he is released as a sex offender, Mr. Faldon will be in his 50s, and it is not clear he will be able to remain skilled as a machinist while within the Bureau of Prisons considering the serious mental health challenges he has been facing. PSR ¶¶ 70, 71. This Court should thus waive the special assessment based on Mr. Faldon's indigency and his limited future earning capacity.

The Court should also either waive or impose a nominal assessment under 18 U.S.C. § 2259A for the same reasons. To impose an assessment under 18 U.S.C. § 2259A, this Court must consider 18 U.S.C. § 3553(a) as well as 18 U.S.C. § 3572 "when ordering this assessment." PSR ¶ 102. For section 3572, the critical subpart, (a)(1)—"the defendant's income, earning capacity, and financial resources," show this Court should either waive or impose a nominal amount. As discussed above, Mr. Faldon has almost no assets, only debt. PSR ¶¶ 87-88. As also shown above, his future earning capacity is limited as well.

Accordingly, this Court should waive the special assessment under 18 U.S.C. § 3014 and either waive or impose a nominal amount under 18 U.S.C. § 2259A.

WHEREFORE, for the foregoing reasons and as may be further argued at sentencing, Justin Faldon prays for a sentence of 180 months, followed by a ten-year term of supervised release.

Respectfully submitted,

*/s/ Kevin B. Gau*
KEVIN B. GAU #51595MO
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Kevin_Gau@fd.org
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jillian S. Anderson, Assistant United States Attorney.

/s/ *Kevin B. Gau*
KEVIN B. GAU
Assistant Federal Public Defender